FRANCES LESSER *v.* DAVID LESSER, ADMINISTRATOR
(ESTATE OF SARAH LESSER)

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON and INGLIS, Js.

Argued January 8—decided February 26, 1948

*David R. Lessler,* for the appellant (defendant).

*Charles G. Albom,* with whom, on the brief, was *David E. FitzGerald, Jr.,* for the appellee (plaintiff).

JENNINGS, J.  This is an action, brought in 1945 by the widow of Joseph Lesser as the record owner of the property in question, to declare a mortgage of record invalid under General Statutes, § 5038, and, in a second count, a gift and not an enforceable obligation, and for "such other and further relief as to equity and law may pertain."  The defendant sought foreclosure of the mortgage by cross-complaint.  The plaintiff answered that the right to foreclose had been lost by laches.  The finding may be summarized as follows: Sarah Lesser became a widow in 1919 and never remarried.  She had sev-

eral children, among whom was Joseph Lesser. Joseph contributed regularly to his mother's support from the time of his father's death until his own death, even when he was in financial difficulties. He was the only one of the children to do so until 1934, when the other sons began making regular contributions. The relationship between Joseph and his mother was always friendly and they were devoted to each other. Joseph was in poor health during the latter years of his life and died in October, 1943. His mother died in August, 1944, at the age of eighty-five.

In 1923, Joseph was the owner of considerable property. On September 6 of that year he gave his demand negotiable note to his mother in the amount of $4000, payable with semiannual interest at the rate of 6 per cent. The note was secured by a mortgage of even date on his shore cottage. Neither document was produced at the trial nor was either ever seen by any of Sarah's living children. The mortgage was listed by Joseph as an incumbrance in a second mortgage given to another brother in 1927. The latter was paid and discharged. Nothing was ever paid on the first mortgage by way of principal or interest. During the summer of 1936, Sarah made one of her regular and frequent visits to Joseph. She stated in the presence of his family that she had never received any money as payment on account of the mortgage and that she intended to surrender the mortgage to him. Sarah had nearly $7000 cash in bank when she died. This cash came into the possession of David, another son, who was later appointed her administrator, but he never declared it as a part of her estate. On May 7, 1943, Joseph quitclaimed the property in question to the plaintiff, his wife. He had also turned over his

property and business to her, and when he died he had no property of any kind. In October, 1943, after the transfer and shortly before his death, he asked David, in the presence of the plaintiff, to obtain a release of the mortgage he had made to his mother in order that the property might be given as a memorial to the Jewish Orphans. After Joseph's death, negotiations were had with a view to carrying out his request and to compromising the interests of the plaintiff and of Sarah's other children in the property, but nothing came of them. The plaintiff then brought this action, in which the defendant filed a cross-complaint as stated above.

The court further found that Joseph and the plaintiff had been in undisturbed possession of the property for at least seventeen years and that no evidence had been offered of any payment on account of the debt or other act in recognition of the existence of the mortgage as a valid mortgage within that period. Such changes in the finding as the defendant is entitled to would add nothing material to the result. The court concluded in effect that the mortgage is invalid as a lien and that the plaintiff should have judgment on both the complaint and cross-complaint.

The plaintiff initiated this proceeding, but the practical approach is to determine first whether or not the defendant, as Sarah's administrator, has a mortgage which he is entitled to foreclose under his cross-complaint. If he has, it is not an invalid lien. The applicable principles are succinctly stated in *Arnold* v. *Hollister,* 131 Conn. 34, 38, 37 A. 2d 695: "This is an equitable proceeding to foreclose a mortgage, and the Statute of Limitations does not apply ex proprio vigore; it is recognized in this type of case only by analogy. *Skinner* v. *Hale,* 76 Conn.

223, 227, 56 Atl. 524, and cases cited. Equity ordinarily will refuse a remedy when the statute applying to similar actions at law has run. *Nichols* v. *Nichols,* 79 Conn. 644, 657, 66 Atl. 161. But just as it may give a remedy after the statute has run, so it may dismiss an action for laches within the statute's period. *Richards* v. *Mackall,* 124 U. S. 183, 188, 8 Sup. Ct. 437." Again, it is said in *House* v. *Peacock,* 84 Conn. 54, 59, 78 A. 723: ". . . where a mortgagor has under ordinary conditions been permitted to remain in undisturbed possession for fifteen years after the mortgagee had a right of action, without recognition on the part of the mortgagor of the mortgage relation by a payment on account of the mortgage debt, or other act keeping the debt alive, or recognizing the continued existence of the mortgage, there has been for that period such an indication of the mortgagor's attitude of non-subordination to the rights of the mortgagee as was sufficient to impose upon the latter the duty of taking legal steps to enforce his rights if he, being competent to act, was not to be charged with laches." These quotations have been made at length because they so closely fit the facts of this case. The only reference to the mortgage by Sarah was a statement that she had received no payment on account of it and intended to surrender it to Joseph. Joseph referred to the mortgage twice. The second mortgage stated the property was free of incumbrances except the mortgage in question. It was given in 1927, however, more than seventeen years before the date of the cross-complaint. He also asked the defendant, in October, 1943, to obtain a release of the mortgage from Sarah, but this was at least five months after he had conveyed the property to his wife. As a stranger to the title, he could not affect the plaintiff's

rights. See *Mooney* v. *Mooney*, 80 Conn. 446, 451, 68 A. 985. Joseph occupied the property from before the date of the mortgage to his death, a period of twenty years. The statements and negotiations by the plaintiff with reference to the mortgage were made during an effort to compromise the claims of the parties and get rid of a flaw in the paper title. They did not amount to a recognition of the mortgage as a binding obligation.

It is true, as stated by the defendant, that the relationship of the parties is to be considered; *Skinner* v. *Hale,* supra; *House* v. *Peacock,* supra; *Arnold* v. *Hollister,* supra; but family relationship does not conclusively excuse the mortgagee from taking some action, unless possibly in the case of husband and wife occupying the mortgaged property. *Skinner* v. *Hale,* supra; see, by analogy, note 1 A. L. R. 821. It suffices to say that under all the circumstances the court reasonably could conclude that the mortgagee had lost her right to foreclose through laches.

The question whether the plaintiff is entitled to the relief awarded her on her complaint remains. At this point a very practical suggestion of a California court is pertinent. In a case factually similar, the court, after finding that the mortgagee was not entitled to foreclose, commented that since the mortgagee by his cross-complaint had brought about a finding that his mortgage was barred he had himself practically caused the removal of the cloud on title. *Marshutz* v. *Seltzor,* 5 Cal. App. 140, 144, 89 P. 877. The mortgage in this case remains undischarged of record, however, and the defendant has advanced a proposition new to this jurisdiction. He claims that the plaintiff is entitled to relief only on the condition that she pay the amount of the mortgage with interest.

Section 5038 originated in Public Acts, 1907, Chap. 107, but no changes material in this case have since been made. It reads, in part, as follows: "Sec. 5038. Discharge of mortgages after seventeen years. When the record title to real property is incumbered by any undischarged mortgage, and the mortgagor or those owning his interest therein have been in undisturbed possession of such property for at least seventeen years . . . the mortgagor or the person or corporation owning his interest in such property may bring a petition to the superior court . . . setting forth the facts and claiming a judgment. . . . if no evidence shall be offered of any payment on account of the debt secured by such mortgage within said period of seventeen years, or of any other act within said period in recognition of its existence as a valid mortgage, the court may render a judgment. . . . declaring such mortgage invalid as a lien against such real estate . . . and no action to enforce a title under such mortgage shall thereafter be maintained."

This statute has been construed in only one case since its enactment, *Arnold* v. *Hollister,* 131 Conn. 34, 38, 37 A. 2d 695. That case holds that the statute is not one of limitation barring an action on a mortgage after a specified time but one which authorizes an action in which affirmative relief may be granted if and only if specified conditions are met. ". . . whether or not that relief would be granted would depend on relevant circumstances. . . ." This is a very broad directive and gives the trial court a wide discretion and a correspondingly great responsibility. It is to be noted, however, that the power to declare such a mortgage invalid is specifically given by the statute if the conditions are met, and, as noted above, such a decree, in the case

of a mortgage already litigated and found unenforceable, does no more than define, as a matter of public record, a condition which already exists. Anyone in privity with the plaintiff could, at any time hereafter, plead res judicata in any action brought by the defendant or his assignees to enforce the mortgage. Furthermore, the redemption after so long a period well might cost more than the property was worth due to the accumulation of interest.

Connecticut would, of course, in a proper case apply the maxim that he who seeks equity must do equity. *Chamberlain* v. *Thompson,* 10 Conn. 243, 251; *Coburn* v. *Raymond,* 76 Conn. 484, 490, 57 A. 116; *Beckwith* v. *Cowles,* 85 Conn. 567, 570, 83 A. 1113; *Lomas & Nettleton Co.* v. *Isacs,* 101 Conn. 614, 625, 127 A. 6; *Ryan* v. *Rizzo,* 114 Conn. 467, 472, 159 A. 272. The general proposition that a plaintiff who seeks to have an unpaid but unenforceable mortgage declared invalid can have relief only if the mortgage is paid, with interest, has not arisen here, as stated above. The weight of authority elsewhere supports that proposition on the general ground that the maxim cited applies. The annotated majority and minority opinions in *House* v. *Carr,* 185 N. Y. 453, 78 N. E. 171, 6 L. R. A. (N. S.) 510, and *Tracy* v. *Wheeler,* 15 N. D. 248, 107 N. W. 68, 6 L. R. A. (N. S.) 516, cite many of the arguments and cases. See also note, 164 A. L. R. 1393.

The plaintiff in the case at bar is not invoking general equitable principles, as is the case in many, if not most, of the cases refusing the plaintiff affirmative relief, but is proceeding under a statute apparently passed to meet this specific situation. Nothing contained therein suggests that a plaintiff must fulfill the conditions attendant on a claim of title by

adverse possession. The statute is not mandatory and equitable considerations are not excluded, but it does create a special statutory cause of action. This has been the interpretation of the similar but more general statutory action to quiet title, General Statutes, § 5035. *Cahill* v. *Cahill*, 76 Conn. 542, 546, 57 A. 284; *Dawson* v. *Orange*, 78 Conn. 96, 100, 61 A. 101; *Foote* v. *Brown*, 78 Conn. 369, 377, 62 A. 667; *Spencer* v. *Merwin*, 80 Conn. 330, 334, 68 A. 370; *Ackerman* v. *Union & New Haven Trust Co.*, 90 Conn. 63, 72, 96 A. 149.

Weighing these and other considerations, we decline to hold, as urged by the defendant, that a plaintiff seeking the affirmative relief of the cancellation of a mortgage, unenforceable because of lapse of time, must pay the debt recited in the mortgage deed, with interest, as a condition of securing relief. The decision in each case must be made in consideration of the "relevant circumstances" referred to in *Arnold* v. *Hollister*, 131 Conn. 34, 38, 37 A. 2d 695, and of the provisions of the statute. The Massachusetts court has gone so far as to say of a similar statute that, if its conditions are fulfilled, it is "an absolute statutory bar to all claims under the mortgage." *Mitchell* v. *Bickford*, 192 Mass. 244, 246, 78 N. E. 453.

The statute under consideration states that a plaintiff complying with the conditions laid down may have relief. The finding establishes that the plaintiff has complied with the prescribed conditions. The defendant has established no controlling countervailing equities. On the contrary, as between the original parties the result is not only just and right but one which both obviously would have desired. The alternative of leaving the plaintiff in the possession of property which she might never be able to sell to advantage because of the unenforceable

but undischarged mortgage of record does not make sense. The mortgage under consideration in the case at bar was not a commercial or business proposition but a family affair beween a mother and son devoted to each other and both deceased. The claims now urged by the defendant were made in the trial court and overruled. We cannot say that this constituted an abuse of discretion.

The inventory of the estate of the decedent was excluded on objection. It would have added nothing material to the facts in evidence. It is apparent from an examination of the finding, conclusions and memorandum of decision that the second count of the complaint alleging that the mortgage was a gift without consideration was not an element in the decision.

There is no error.

In this opinion BROWN, DICKENSON and INGLIS, Js., concurred.

MALTBIE, C. J. (dissenting). I am in full agreement with the principles of law stated in the majority opinion, but I am convinced that the plaintiff had so recognized the mortgage that it was enforceable against her.