## STATE OF CONNECTICUT *v.* JIMMIE R. BLETSCH
## (SC 17340)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

---

[6] See *Lagassey* v. *State*, 50 Conn. Sup. 130, 913 A.2d 1153 (2005).

Argued October 25, 2006—officially released January 9, 2007

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, chief state's attorney, and *David Smith*, assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Jimmie R. Bletsch, appeals, following our grant of certification, from the judgment of the Appellate Court affirming the judgments of conviction of three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[1] and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21.[2] *State* v.

---

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

Although changes have been made to other subdivisions of the statute since the time of the offenses in the present case, § 53a-71 (a) (1) has remained the same. References to § 53a-71 (a) (1), therefore, are to the current revision.

[2] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . ."

All references in this opinion to § 53-21 are to the 1999 revision.

*Bletsch*, 86 Conn. App. 186, 187–88, 860 A.2d 1239 (2004). The defendant claims that the Appellate Court improperly concluded that: (1) the trial court had not abused its discretion in denying his motion for an exemption from the Connecticut sex offender registry;[3]

[3] The Connecticut sex offender registry is part of the statutory scheme commonly referred to as "Megan's Law." See General Statutes § 54-250 et seq. As enacted in Connecticut, Megan's Law requires, inter alia, that convicted sex offenders register with the commissioner of public safety as a sex offender if and when they are released into the community. See General Statutes §§ 54-251 through 54-254. The department of public safety and all local police departments statutorily are required to maintain a registry of all such sex offenders and are directed to inform individuals of dangers posed by a local sex offender. See General Statutes §§ 54-257 and 54-258.

The registry requirement and exemption therefrom that is at issue in the present case is found in General Statutes (Rev. to 2001) § 54-251, which provides in relevant part: "(a) Any person who has been convicted or found not guilty by reason of mental disease or defect of a criminal offense against a victim who is a minor or a nonviolent sexual offense, and is released into the community on or after October 1, 1998, shall, within three days following such release, and whether or not such person's place of residence is in this state, register such person's name, identifying factors, criminal history record and residence address with the Commissioner of Public Safety, on such forms and in such locations as the commissioner shall direct, and shall maintain such registration for ten years except that any person who has one or more prior convictions of any such offense or who is convicted of a violation of subdivision (2) of subsection (a) of section 53a-70 shall maintain such registration for life. Prior to accepting a plea of guilty or nolo contendere from a person with respect to a criminal offense against a victim who is a minor or a nonviolent sexual offense, the court shall (1) inform the person that the entry of a finding of guilty after acceptance of the plea will subject the person to the registration requirements of this section, and (2) determine that the person fully understands the consequences of the plea. If such person changes such person's address such person shall, within five days, register the new address in writing with the Commissioner of Public Safety, and, if the new address is in another state, such person shall also register with an appropriate agency in that state, provided that state has a registration requirement for such offenders. If any person who is subject to registration under this section regularly travels into or within another state or temporarily resides in another state for purposes including, but not limited to employment or schooling, such person shall notify the Commissioner of Public Safety and shall also register with an appropriate agency in that state provided that state has a registration requirement for such offenders. During such period of registration, each registrant shall complete and return forms mailed to such registrant to verify such registrant's residence address and shall submit to the retaking of a photographic image upon request of the Commissioner of Public Safety.

and (2) his conviction in one case for both sexual assault in the second degree and risk of injury to a child for the same act did not constitute a violation of the double jeopardy clause.[4] We conclude that the Appellate Court properly determined that the trial court reasonably had concluded that the defendant was not entitled to an exemption from the sex offender registry. As to the defendant's second claim on appeal, we conclude that there was no double jeopardy violation.

The Appellate Court opinion sets forth the following pertinent facts.[5] "In the fall of 1999, the defendant, whose date of birth is October 14, 1981, engaged in sexual encounters with two females who were younger

"(b) Notwithstanding the provisions of subsection (a) of this section, the court may exempt any person who has been convicted or found not guilty by reason of mental disease or defect of a violation of subdivision (1) of subsection (a) of section 53a-71 from the registration requirements of this section if the court finds that such person was under nineteen years of age at the time of the offense and that registration is not required for public safety. . . ."

[4] "The constitution of Connecticut does not contain an express prohibition against double jeopardy. Instead, we repeatedly have held that the due process guarantees, presently encompassed in article first, § 8, of the Connecticut constitution, include protection against double jeopardy. See, e.g., *State* v. *Crawford*, 257 Conn. 769, 774, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002); *State* v. *Nixon*, 231 Conn. 545, 550, 651 A.2d 1264 (1995); *State* v. *Chicano*, 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); *Kohlfuss* v. *Warden*, 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962). We have observed, however, that 'the absence of an explicit constitutional double jeopardy provision strongly suggests that the incorporated common-law double jeopardy protection mirrors, rather than exceeds, the federal constitutional protection.' *State* v. *Tuchman*, [242 Conn. 345, 360, 699 A.2d 952 (1997), cert. dismissed, 522 U.S. 1101, 118 S. Ct. 907, 139 L. Ed. 2d 922 (1998)]." *State* v. *Michael J.*, 274 Conn. 321, 350, 875 A.2d 510 (2005).

[5] The facts set forth by the Appellate Court as to the first case, which involved an incident in Danielson, are those that the trial court reasonably could have found based on the state's recitation of facts before the defendant pleaded guilty to the charge in that case. The defendant's counsel did not dispute these facts, but merely stated after the state's recitation that the defendant's version of events differed slightly from the state. The facts set forth by the Appellate Court as to the second case, which involved incidents in Norwich, are those that the jury reasonably could have found.

than sixteen years of age. At that time, he was more than two years older than those minors. See General Statutes § 53a-71 (a) (1). The defendant was subsequently charged in two separate cases, hereinafter referred to as the 'Danielson' and 'Norwich' cases.

"The Danielson case involved a sexual encounter between the defendant and the first victim[6] that occurred on October 4, 1999. The victim was fifteen years old at the time. After speaking to her on the telephone, the defendant arrived at the victim's home at approximately 1:48 a.m. with a friend, Sean Gauthier. The defendant had been drinking alcohol that evening, and Gauthier stated that the defendant went there for the express purpose of having sexual relations with the victim. After entering her bedroom, the defendant pushed the victim onto the bed and rubbed his penis on her face and tried to make her suck it. The victim refused, and the defendant left.

"The Norwich case involved two sexual encounters between the defendant and a second victim on November 19 and 27, 1999. The Norwich victim was fourteen years old at the time. During both encounters, the defendant requested that the victim engage in oral sex with him, to which she acquiesced. During the November 27 encounter, the defendant digitally penetrated her vagina with his fingers. The defendant also unsuccessfully attempted to have vaginal intercourse with the victim.

"The defendant was charged by substitute information in the Norwich case with two counts of sexual assault in the second degree and two counts of risk of injury to a child. After a trial by jury, the defendant was convicted on all counts. Thereafter, in the Danielson

---

[6] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

case, he pleaded guilty, under the *Alford* doctrine,[7] to sexual assault in the third degree in violation of General Statutes § 53a-72a.[8]

"At a sentencing hearing, the court heard testimony from the defendant's family and friends, and received several letters on his behalf.[9] The court also heard that on September 1, 2000, the defendant had been arrested after he approached an undercover police officer who was posing as a prostitute and solicited a sexual act from her in exchange for $20.[10] In sentencing the defendant, the court emphasized that the present matter involved three separate incidents of sexual assault and consequently sentenced the defendant to a total effective term of five years imprisonment, execution suspended after eighteen months, with ten years probation

[7] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt, but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Stevens*, 278 Conn. 1, 3 n.2, 895 A.2d 771 (2006).

[8] "On August 15, 2001, the trial court permitted the defendant, in the Danielson case, to withdraw his [July 2, 2001] guilty plea made under *Alford* to sexual assault in the third degree, after which the defendant pleaded guilty to sexual assault in the second degree in violation of . . . § 53a-71 (a) (1). The court ordered that the length, terms and conditions of the defendant's sentence, as imposed on August 8, 2001, would remain the same." *State* v. *Bletsch*, supra, 86 Conn. App. 189 n.6. We further explain in part I of this opinion the specific circumstances surrounding the substitution of the defendant's guilty plea to second degree sexual assault in place of his guilty plea to third degree sexual assault.

[9] The trial court also confirmed on the record that, although the court had heard from the family of the victim in the Norwich case, there had been no response to efforts made to contact the victim in the Danielson case and her family.

[10] "[At the sentencing hearing], the court permitted the defendant to plead guilty to breach of the peace in violation of General Statutes (Rev. to 1999) § 53a-181, for the September 1, 2000 incident involving solicitation of a prostitute. The defendant has not raised any claims challenging that conviction." *State* v. *Bletsch*, supra, 86 Conn. App. 190 n.7.

pursuant to twelve specific conditions."[11] *State* v. *Bletsch,* supra, 86 Conn. App. 188–90.

At sentencing, the defendant made a motion for an exemption from the Connecticut sex offender registry, claiming that he was entitled to the exemption because he was under nineteen at the time of the offenses, the sexual activities at issue in the charges were consensual in nature and he did not pose a risk to the public. In rejecting the defendant's request, the trial court reasoned that it was "significant that the Danielson matter occurred during the same period of time. And perhaps had it been one or the other of these instances, the court might have been more inclined to accept your argument."

It is from these judgments that the defendant appealed to the Appellate Court. He first claimed that the trial court had abused its discretion in denying his motion for an exemption from the Connecticut sex

[11] "The conditions of probation required the defendant to: (1) participate in, and complete, sex offender evaluation, and engage in any subsequent treatment recommended by the office of adult probation and provided by a therapist approved by the probation office; (2) participate in periodic polygraph examinations that are to be conducted by a specially trained examiner and evaluated for the purpose of risk management; (3) have no contact with either of the victims, including but not limited to, written, face to face, telephone, Internet or any other means of communication, whether made personally or through a third person; (4) immediately report any incidental contact with either victim to his probation officer; (5) engage in any substance abuse evaluation and treatment that is deemed necessary; (6) submit to random urine analysis or alcohol sensor testing as recommended by his probation officer; (7) engage in full-time employment or full-time education upon his release; (8) contact law enforcement authorities and register as a sex offender immediately upon release; (9) immediately report any and all sexual relationships in which he engages, whether new or established, to his probation officer; (10) refrain from possession of, or subscription to, any sexually stimulating material that is deemed inappropriate by his probation officer; (11) refrain from patronizing any place in which such sexually stimulating literature or entertainment is available; and (12) completely abstain from alcoholic beverages." *State* v. *Bletsch,* supra, 86 Conn. App. 190 n.8.

offender registry. *State* v. *Bletsch*, supra, 86 Conn. App. 191. Specifically, the defendant claimed that, because he was younger than nineteen years of age at the time of the offenses and because he posed no risk to public safety, the trial court was *required* to exempt him from the sex offender registry. The Appellate Court noted that this issue was one of first impression, thus requiring it both to construe the exemption under General Statutes (Rev. to 2001) § 54-251 and to apply that construction to the facts of the case. Id. The Appellate Court determined that the two factors under § 54-251 were not dispositive, but, rather, were threshold determinations that must be made before the court considers whether an exemption is appropriate. Id., 193. The court further concluded that, even if those two factors were satisfied in a given case, the trial court still retained discretion to determine whether an exemption was warranted. Id. Accordingly, the Appellate Court concluded that the trial court's determination of whether to exempt an individual from the registration requirements under § 54-251 (b) is properly reviewed under an abuse of discretion standard. Id., 192. Because the record in the present case supported the trial court's conclusion that the defendant did indeed pose a risk to public safety, the Appellate Court concluded that the trial court properly had denied the defendant's exemption request. Id., 193. Specifically, the Appellate Court noted that, despite the defendant's repeated characterizations of the sexual assaults as "consensual," the victim's statement in the application for the defendant's arrest warrant in the Danielson case alleged that the defendant had "forced himself" on her and that the victim had "repeatedly told him to stop and tried pushing him away." (Internal quotation marks omitted.) Id.

The defendant also claimed that the trial court had violated his rights against double jeopardy in convicting him of both second degree sexual assault and risk of

injury to a child in connection with a single offense. Id., 194. The Appellate Court disagreed, concluding that the defendant could not prevail on this unpreserved claim because he could not establish that the alleged constitutional violation clearly exists, as required under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[12] Specifically, the court determined that, because under existing precedent the elements necessary for conviction of risk of injury and sexual assault in the second degree are different, his double jeopardy rights were not violated. *State* v. *Bletsch*, supra, 86 Conn. App. 195. This certified appeal followed.[13]

The defendant first claims that the Appellate Court should have determined that the trial court had acted improperly when it found that he posed a risk to public safety, and when, accordingly, it improperly determined that he was neither eligible for, nor deserving of, the statutory exemption to the sex offender registration requirement. Specifically, the defendant contends that, under the facts and circumstances properly considered by the trial court at his sentencing, the trial court should have determined that the consensual sexual activity for which he was charged, prosecuted and punished, was

---

[12] "In *State* v. *Golding*, supra, 213 Conn. 239–40, we held that 'a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail.'" *State* v. *Luster*, 279 Conn. 414, 420 n.2, 902 A.2d 636 (2006).

[13] We granted the defendant's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly determine that the trial court did not abuse its discretion in denying the defendant's motion for exemption from the sex offender registry?"; and (2) "Did the Appellate Court properly conclude that the defendant's convictions for sexual assault in the second degree and risk of injury to a child did not constitute double jeopardy?" *State* v. *Bletsch*, 272 Conn. 918, 866 A.2d 1288 (2005).

"precisely th[e] type of situation [the legislature had] in mind when it created an exemption from registration, and, [that accordingly], the trial court abused its discretion in denying the defendant's motion for exemption." In regard to his second claim, the defendant asserts that the Appellate Court applied an improper standard to the double jeopardy issue and that, because it is not possible to have sexual intercourse with a child as proscribed under § 53a-71 (a) (1) other than in the manner proscribed under § 53-21, his double jeopardy rights had indeed been violated.

The state contends in response to the defendant's first claim that the record supports the trial court's conclusion that the defendant posed a risk to public safety and that its decision not to exempt him from the sex offender registry was proper. The state contends in response to the defendant's second claim that, because each statute of which the defendant was convicted contains an essential element that the other does not, his double jeopardy rights were not violated.

As to its resolution of the defendant's first claim, we agree with the Appellate Court's interpretation of § 54-251, concluding that the two factors prescribed therein—the offender was younger than nineteen years of age at the time of the offenses and posed no risk to public safety—did not *require* the trial court to exempt the defendant from the sex offender registry, but merely allowed the trial court to consider whether to exempt him from the registry. *State* v. *Bletsch,* supra, 86 Conn. App. 193. We further agree with the Appellate Court that the trial court reasonably rejected the defendant's request for exemption based upon its determination that registration was necessary for public safety purposes. As to the defendant's second claim on appeal, we conclude that the defendant's double jeopardy rights were not violated.

I

The Appellate Court's determination in this case as to the defendant's eligibility for exemption from the registry requirement under § 54-251 depends first on its statutory interpretation and then on its application of that interpretation to the facts of this case.[14] Accordingly, "[t]he [threshold] issue before this court involves a question of statutory interpretation that . . . requires our plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citations omitted; internal quotation marks omitted.) *Cogan* v. *Chase Manhattan Auto Financial Corp.*, 276 Conn. 1, 7, 882 A.2d 597 (2005). Neither party has claimed that the statute is plain and unambiguous as applied to the facts of this case.

---

[14] Prior to the Appellate Court opinion in this case, there have been no other decisions that provide guidance in the application of the exemption to the sex offender registration requirements under § 54-251.

We begin with the statute. General Statutes (Rev. to 2001) § 54-251 provides in relevant part: "(a) Any person who has been convicted . . . of a criminal offense against a victim who is a minor . . . and is released into the community on or after October 1, 1998, shall, within three days following such release . . . register . . . with the Commissioner of Public Safety . . . and shall maintain such registration for ten years . . . . (b) Notwithstanding the provisions of subsection (a) of this section, the court may exempt any person who has been convicted . . . of a violation of subdivision (1) of subsection (a) of section 53a-71 from the registration requirements of this section if the court finds that such person was under nineteen years of age at the time of the offense and that registration is not required for public safety. . . ."

Therefore, because § 54-251 (b) provides that the court may exempt a person convicted under specified circumstances "if" the court makes certain findings, namely, that the "person was under nineteen years of age at the time of the offense and that registration is not required for public safety," like the Appellate Court, we read these two factors as threshold determinations that must be satisfied before the trial court may consider whether to exempt the offender from the sex offender registry. Moreover, we consistently have held that, as opposed to "[d]efinitive words, such as must or shall, [which] ordinarily express legislative mandates of a nondirectory nature"; (internal quotation marks omitted) *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 20, 848 A.2d 418 (2004); the word "may" imports permissive conduct and the conferral of discretion. *Waterbury* v. *Washington*, 260 Conn. 506, 531, 800 A.2d 1102 (2002); *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 122, 742 A.2d 1257 (2000); *Seals* v. *Hickey*, 186 Conn. 337, 345–47, 441 A.2d 604 (1982); see *Lesser*

v. *Lesser*, 134 Conn. 418, 425, 58 A.2d 512 (1948); *Arnold* v. *Hollister*, 131 Conn. 34, 38–39, 37 A.2d 695 (1944). Only when the context of legislation permits such interpretation and if the interpretation is necessary to make a legislative enactment effective to carry out its purposes, should the word "may" be interpreted as mandatory rather than directory. *Alexander* v. *Retirement Board*, 57 Conn. App. 751, 764, 750 A.2d 1139, cert. denied, 254 Conn. 902, 755 A.2d 217 (2000); see *Karp* v. *Urban Redevelopment Commission*, 162 Conn. 525, 530, 294 A.2d 633 (1972); *State ex rel. Markley* v. *Bartlett*, 130 Conn. 88, 93–94, 32 A.2d 58 (1943); *Lake Garda Co.* v. *LeWitt*, 126 Conn. 588, 590–91, 13 A.2d 510 (1940). Thus, under the "may exempt" language in § 54-251 (b), even when the two enumerated factors are satisfied in a given case, the court still may decline to grant the registry exemption. See 42 H.R. Proc., Pt. 11, 1999 Sess., p. 3884, remarks of Representative Michael P. Lawlor ("[i]f the court makes a finding that public safety could still be protected without publicizing the name then [the statute] would give very limited discretion to the judge to waive the public aspect of the Megan's Law registration"); see also footnote 18 of this opinion setting forth additional legislative history.

Having interpreted § 54-251, before we turn to the application of our interpretation to the facts of this case, we begin with the standard of review. Whether the offender is under the age of nineteen at the time of the offense is an issue of fact that requires little discussion in general, and is not in dispute in this case. Turning next to whether an offender poses a risk to public safety and whether, even if that question is answered in the negative, the trial court, nevertheless, may deny an exemption request, it is apparent that the trial court first must make factual findings and then must exercise its discretion. In other words, if, based

on the facts and circumstances properly before it,[15] the trial court finds that the offender was under the age of nineteen at the time of the offense and poses no risk to public safety, it nevertheless retains discretion to determine whether an exemption is warranted.

The trial court's findings of fact are entitled to great deference and will be overturned only upon a showing that they were clearly erroneous. See *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997). If a trial court properly finds that the defendant meets the age requirement and does not pose a safety risk, it then makes the determination regarding exemption, which will be upset only for a manifest abuse of discretion. "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . ." (Internal quotation marks omitted.) *Schilberg Integrated Metals Corp.* v. *Continental Casualty Co.*, 263 Conn. 245, 274, 819 A.2d 773 (2003). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Simmons* v. *Simmons*, 244 Conn. 158, 175, 708 A.2d 949 (1998).

Therefore, the question we turn to next is whether the trial court reasonably determined that the defendant

---

[15] Whether the trial court properly could have considered certain evidence is a legal determination; see *State* v. *Eric M.*, 271 Conn. 641, 649–50, 858 A.2d 767 (2004); which we address later in this part of the opinion. Because we conclude that the trial court properly could have factored into its findings certain evidence regarding the defendant's use of force against the victim in the Danielson case, we apply the clearly erroneous standard to the trial court's finding that the defendant posed a risk to public safety based on the record properly before it.

did indeed pose a risk to public safety. Before we can answer that inquiry, however, we must address one last standard—what a trial court properly may consider in making that factual finding.

Our law in this area is well settled. "A sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial. *United States* v. *Sweig*, 454 F.2d 181, 183–84 (2d Cir. 1972). . . . To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt; *United States* v. *Baylin*, 696 F.2d 1030, 1039 (3d Cir. 1982); [and] evidence of crimes for which the defendant was indicted but neither tried nor convicted; *United States* v. *Bowdach*, 561 F.2d 1160, 1175 (5th Cir. 1977) . . . . Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . . *United States* v. *Robelo*, 596 F.2d 868, 870 (9th Cir. 1979). Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance. *Williams* v. *Oklahoma*, 358 U.S. 576, 584, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959). It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. *United States* v. *Tucker*, 404 U.S. 443, 446, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972). . . . *State* v. *Huey*, 199 Conn. 121, 126–27, 505 A.2d 1242 (1986)." (Internal quotation marks omitted.) *State* v. *Eric M.*, 271 Conn. 641, 649–50, 858 A.2d 767 (2004). Finally, although a trial court's discretion is not com-

pletely unfettered, and information may be considered as a basis for a sentence only if it has some minimal indicium of reliability, we have stated that "[a]s long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." *State* v. *Huey*, supra, 127.

The defendant acknowledges this sweeping standard, but claims that the Appellate Court improperly concluded that the trial court reasonably could have relied on facts alleged by the victim in the Danielson case in the arrest warrant as a basis for its finding that the defendant poses a risk to public safety. Specifically, he contends that, because the victim's statements describing the event, which alleged that the defendant had acted with force and without her consent,[16] had not been sworn to, the trial court properly could not rely on them. We disagree. It is well settled that trial judges "may examine any reliable evidence, including that which was not introduced at trial . . . and may consider a wide range of facts concerning a defendant's character and his crime." (Citation omitted.) *Williams* v. *United States*, 427 A.2d 901, 904 (D.C. App. 1980), cert. denied, 450 U.S. 1043, 101 S. Ct. 1763, 68 L. Ed. 2d 241 (1981); see also *Johnson* v. *United States*, 508 A.2d 910, 911 (D.C. App. 1985). This latitude includes considering evidence that would normally be inadmissible at trial. *United States* v. *Campbell*, 684 F.2d 141, 152 (D.C. Cir. 1982). Although due process is violated when the sentencing judge relies on "material false assumptions as to any facts relevant to sentencing"; (internal quotation marks omitted) *United States* v. *Hamid*, 531 A.2d 628, 644 (D.C. App. 1987), quoting

---

[16] Specifically in her affidavit, the victim in the Danielson case stated that the defendant had " 'forced himself on me' " and that she had " 'repeatedly told him to stop and tried pushing him away.' "

*United States* v. *Malcolm,* 432 F.2d 809, 816 (2d Cir. 1970); that is not the case here.

In addition to the statement of the victim in the Danielson case, we note the following facts reflected in the record. The defendant initially pleaded guilty under the *Alford* doctrine; see footnote 7 of this opinion; to sexual assault in the third degree in violation of § 53a-72a (a), which requires proof of compulsion as an essential element.[17] Thereafter, the trial court allowed the defendant to withdraw his plea; see footnote 8 of this opinion; because a conviction under § 53a-72a requires lifetime sex offender registration, rather than the ten year period imposed under § 53a-71. The state then filed a substitute information charging the defendant with sexual assault in the second degree, thereby eliminating the issue of compulsion and the lifetime sex offender registration. Nothing about that exchange, however, suggested that the victim's statement in the arrest warrant affidavit was materially false. Moreover, although the victim in the Danielson case and her family failed to respond to any further contact by the criminal justice system after the victim had given her statement, the trial court was not required to find that these actions indicated that her statement to the police had been untruthful. Accordingly, the trial court reasonably could have considered the victim's statement of the facts underlying the offense to which the defendant had pleaded in deciding whether to exempt him from the registration requirement under § 54-251 (b).

---

[17] General Statutes § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person . . . ."

Although subsection (b) of the statute was amended in 2002, § 53a-72a (a) has remained unchanged. References herein to § 53a-72a (a) are to the current revision.

Because we conclude that the trial court properly could have factored into its findings evidence regarding the defendant's use of force against the victim in the Danielson case, we turn to the trial court's ultimate finding that the defendant poses a risk to public safety. This question distills to the following—whether based on all the facts and circumstances before it, the trial court's finding that the defendant poses a risk to public safety was clearly erroneous. The defendant contends that, because the principal purpose of Megan's Law was to promote public safety, and because the exemption was intended to allow trial courts to exempt from registration individuals engaged in consensual sexual activity between teenagers,[18] he was not an intended target

[18] This court previously has noted that the intent of the registration requirement under Megan's Law "was to alert the public by identifying potential sexual offender recidivists when necessary for public safety. . . . The seriousness of the harm that sex offenders' actions cause to society and the perception, supported by some data, that such offenders have a greater probability of recidivism than other offenders have recently combined to prompt the enactment of numerous laws across the country directed specifically toward persons convicted of crimes involving sexual conduct." (Citations omitted; internal quotation marks omitted.) *State* v. *Waterman*, 264 Conn. 484, 490, 825 A.2d 63 (2003).

With respect to the legislature's intent in adding the registration exception, we do not read the legislative history as broadly as the defendant suggests. Representative Lawlor, the chairman of the judiciary committee, emphasized that the exception provides "very limited discretion to the judges under very, very limited circumstances." 42 H.R. Proc., supra, p. 3885; see also id., p. 3884. Lawlor further underscored that the paramount consideration in exercising that discretion "is not in any way a sensitivity to the offender, it's a sensitivity to the victim. . . . Our hope is that judges will defer to the wishes of the victim and the victim's family when those are brought to the judge." Id., p. 3884. Specifically, a concern had come to light through victims and victims' groups that a victim may be identified through the publication of the name of the offender. Id., pp. 3884–85, 3890–91. Although Representatives Lawlor and Denise Merrill both referred to statutory rape as an offense that could present the type of nonviolent offense that might permit a judge to find that a defendant did not pose a risk to public safety; see id., pp. 3884–85, remarks of Representative Lawlor; id., p. 3917, remarks of Representative Merrill; there is no indication that the legislature intended that a trial court must find that every defendant under the age of nineteen who has engaged in consensual sex with an underage victim, irrespective of the nature of the

of the registration requirement. In other words, because he engaged in what he has characterized as "sexual experimentation of a sort normal to twenty-first century American teenagers," the trial court improperly determined that he poses a risk to public safety. We disagree.

Despite the defendant's characterization of the events as modern day sexual experimentation, or simply "boorish behavior," the trial court was not required to adopt the defendant's portrayal. A review of the record indicates that the trial court reasonably could have found that the defendant's conduct was not the innocent experimentation between two young persons involved in a relationship that the legislature may have had in mind when it provided the discretionary exemption. See footnote 18 of this opinion. As the Appellate Court stated: "In both the Norwich and Danielson cases, the defendant and the minor victim hardly knew each other. In both cases, the defendant, without any prior physical contact with either victim, exposed his penis [and attempted to get the victim to perform fellatio]. Furthermore, in the Norwich case, after an unsuccessful attempt at vaginal intercourse with the victim, [because he could not penetrate her] the defendant asked a male friend who was in the room whether he wanted to 'break' the victim, [who was a virgin, and the defendant suggested that they have a 'threesome,' thereby] prompting the victim to leave the room. The court was well within the proper exercise of its discretion to consider that conduct and to deny the request for an exemption.

"In denying the defendant's motion for a registration exemption, the court found it significant that the sexual assault underlying the Danielson case occurred during the same period of time as the two Norwich assaults.

relationship, the number of offenses or number of victims, does not pose a risk to public safety.

Having presided over the trial in the Norwich case, the court was familiar with the defendant and the underlying facts of that case. It also heard the underlying facts of the Danielson case and was aware of the defendant's arrest in connection with solicitation of a prostitute."[19] *State* v. *Bletsch,* supra, 86 Conn. App. 194.

The trial court recognized that the defendant had matured following his arrest and acknowledged the supportive and affirming testimony by friends and family members. Indeed, those factors were taken into account by the trial court when it rejected the two conditions of probation of no contact with persons under the age of sixteen and no Internet access that had been recommended in the presentence investigation report. Those favorable factors do not, however, compel the conclusion that the trial court's view of the defendant as someone who poses a threat to public safety was improper.[20]

[19] We note that, at his sentencing, when the state related the events regarding the Norwich and Danielson cases as well as the solicitation of a prostitute on which the Appellate Court had relied, the defendant objected only to the state's recitation of a conversation the state had had with the Norwich victim regarding harassment she had experienced at school. The defendant related a different version of the events pertaining to the victim in the Danielson case, but did not expressly claim that the trial court's reliance on the statement in the arrest warrant would be improper.

[20] Nor do we agree with the defendant's claim that, because registration would be counterproductive to his rehabilitation—a "secondary purpose" of Megan's Law—as it may impair his future employment and social opportunities, the trial court should have granted the exemption, reserving registration for those more dangerous. Although such a consideration may be relevant when a trial court exercises its discretion *after* it has found that a defendant poses no safety risk, that consideration is not part of the threshold determination prior to the exercise of the court's discretion. The legislature chose to provide only two factors as threshold determinations that must be satisfied before the trial court may consider whether to exempt the offender from the sex offender registry. We are limited by that designation. See *Giaimo* v. *New Haven,* 257 Conn. 481, 494, 778 A.2d 33 (2001) ("[w]e are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words" [citation omitted; internal quotation marks omitted]). Similarly, we are not persuaded by the defendant's reliance on other jurisdictions that have chosen a more lenient approach to registration. See W. Logan, "A Study

Accordingly, we conclude that the trial court reasonably denied the defendant's motion for an exemption from the Connecticut sex offender registry.

II

We turn next to the defendant's double jeopardy claim. The defendant challenges his conviction in the Norwich case with respect to the two counts related to the November 19, 1999 incident, wherein the defendant had the victim perform fellatio on him.[21] The defendant claims that the Appellate Court improperly determined, in reliance on its decision in *State* v. *Ellison*, 79 Conn. App. 591, 600–601, 830 A.2d 812, cert. denied, 267 Conn. 901, 838 A.2d 211 (2003), that his conviction for both sexual assault in the second degree and risk of injury to a child did not constitute a violation of the double jeopardy clause. The defendant recognizes that this court previously has determined that second degree sexual assault and risk of injury to a child constitute separate offenses for double jeopardy purposes. See *State* v. *James*, 211 Conn. 555, 585, 560 A.2d 426 (1989); *State* v. *McCall*, 187 Conn. 73, 92, 444 A.2d 896 (1982). He contends, however, that this precedent, on which *Ellison* relied, no longer is controlling because those decisions predate the legislature's enactment of subdivision (2) of the risk of injury statute under which he was charged; see Public Acts 1995, No. 95-142; and that this subdivision constitutes a new offense that includes all the essential elements of second degree sexual assault. Thus, he contends that his

in 'Actuarial Justice': Sex Offender Classification Practice and Procedure," 3 Buff. Crim. L. Rev. 593, 602–603 (2000).

[21] The defendant makes clear in his brief to this court that he is not raising a double jeopardy claim as to his conviction in the Norwich case related to the November 27, 1999 incident, involving fellatio and digital penetration of the victim's vagina; nor does he challenge his conviction in the Danielson case, which involved a conviction for only one offense, second degree sexual assault.

conviction of both offenses for the same act constitutes double jeopardy. We disagree.

"The fifth amendment to the United States constitution provides in relevant part: No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of [the Connecticut constitution] include protection against double jeopardy. . . .

"We have recognized that the Double Jeopardy Clause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 293–94, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). The last protection is at issue in the present case. "[W]e have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence

presented at trial." (Internal quotation marks omitted.) *State* v. *Kirsch*, 263 Conn. 390, 420, 820 A.2d 236 (2003).

To convict the defendant of sexual assault in the second degree under § 53a-71 (a), the state must prove that (1) the defendant engaged in sexual intercourse with the victim, (2) the victim was thirteen years of age or older but under sixteen years of age, and (3) the defendant was more than two years older than the victim. To convict the defendant of risk of injury to a child under § 53-21 (2), the state must prove that (1) the defendant had contact with the intimate parts of, or subjected to contact with his intimate parts, (2) a child under the age of sixteen years, (3) in a sexually and indecent manner likely to impair the health or morals of such child.

The crux of the defendant's claim is that, in light of these elements, one cannot engage in sexual intercourse with a child under sixteen, as required for § 53a-71 (a), without either having contact with her intimate parts or without subjecting the victim to contact with that person's intimate parts, as required for § 53-21 (2), and that sexual intercourse with a child under sixteen necessarily will impair the child's morals. The *Blockburger* test, however, requires that we look to charging instruments for the facts the state has alleged to satisfy the statutory elements. In the present case, in the substitute information under which the defendant was charged, the state alleged, with respect to the charge of sexual assault in the second degree, that the defendant "did engage in sexual intercourse with the victim, who was under sixteen years of age and the defendant is more than two years older than the victim." With respect to the charge of risk of injury to a child, the state alleged that the defendant "had contact with the intimate parts of the victim, a child under the age of sixteen years, in a sexually and indecent manner likely to impair the morals of the victim." It is possible,

however, to have " 'sexual intercourse,' " as that term is defined under General Statutes § 53a-65 (2),[22] without having contact with the victim's " 'intimate parts,' " as that term is defined under § 53a-65 (8),[23] if the sexual intercourse involves having the victim perform fellatio. Similarly, it is possible to have contact with the victim's intimate parts, such as her breasts, without engaging in sexual intercourse. Consequently, it was possible to prove each offense in the manner charged in the substitute information without necessarily proving the other offense.[24] Accordingly, the defendant cannot prevail on his double jeopardy claim.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[22] General Statutes § 53a-65 (2) provides: " 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body."

[23] General Statutes § 53a-65 (8) provides: " 'Intimate parts' means the genital area, groin, anus, inner thighs, buttocks or breasts."

[24] We note that, although the allegation in the *substitute information as* to the risk of injury count charged the defendant with having contact with *the victim's intimate parts,* the evidence adduced at trial, which may not be considered for *Blockburger* purposes; *State* v. *Kirsch,* supra, 263 Conn. 420; demonstrated that the November 19, 1999 incident involved only one act, to wit: the victim performing fellatio *on the defendant.*