STATE OF CONNECTICUT *v.* ARTHUR H.[1]
(SC 18100)

Rogers, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.

---

[1] In accordance with the policy of protecting the privacy interests of victims of sexual abuse, we do not identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued April 21—officially released August 26, 2008

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Elizabeth C. Leaming*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Arthur H., appeals from the trial court's judgment ordering that, for a period of ten years following his release from incarceration for his conviction of risk of injury to a child in violation of General Statutes § 53-21 (a) (1),[2] he register in the state's sex offender registry pursuant to General Statutes § 54-254,[3] a provision in the statutory scheme commonly

---

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

We note that changes not relevant to this appeal were made to § 53-21 (a) by No. 07-143, § 4, of the 2007 Public Acts. For purposes of convenience, we refer to the current revision of the statute.

[3] General Statutes § 54-254 (a) provides in relevant part: "Any person who has been convicted or found not guilty by reason of mental disease or defect in this state . . . of any felony that the court finds was committed for a sexual purpose, may be required by the court upon release into the community or, if such person is in the custody of the Commissioner of Correction, at such time prior to release as the commissioner shall direct to register such person's name, identifying factors, criminal history record and residence address with the Commissioner of Public Safety, on such forms and in such locations as the commissioner shall direct, and to maintain such registration for ten years. If the court finds that a person has committed a felony for a sexual purpose and intends to require such person to register under this section, prior to accepting a plea of guilty or nolo contendere from such person with respect to such felony, the court shall (1) inform the person that the entry of a finding of guilty after acceptance of the plea will subject the person to the registration requirements of this section, and (2) determine that the person fully understands the consequences of the plea. . . ."

In 2007, § 54-254 (a) was amended to include other forms of electronic addresses that must be registered with the commissioner of correction. See

known as "Megan's Law." He claims that the order constituted an abuse of discretion and requests that the order be vacated. In the alternative, the defendant claims that the trial court's failure to hold an adversarial evidentiary hearing prior to making its determination that the defendant should be required to register violated his right to due process, and therefore, he requests that the case be remanded for such a hearing. We conclude that the trial court reasonably exercised its discretion in ordering sex offender registration following the defendant's guilty plea to the charge of risk of injury to a child, and that the defendant cannot prevail on his claim of a due process violation because the procedure afforded to the defendant clearly was not constitutionally deficient. Accordingly, we affirm the judgment.

The record reveals the following undisputed facts. The trial court conducted a plea canvass on September 27, 2006, at which the state recited, in relevant part, the following facts in support of the charge of risk of injury to a child. On August 25, 2005, six days after the victim turned sixteen years old, the victim's mother brought a complaint for suspected sexual assault against the defendant as a result of events that had

Public Acts, Spec. Sess., June, 2007, No. 07-4, § 94. Those changes are not relevant to this appeal and, accordingly, we refer to the present revision of the statute for purposes of convenience.

The statutory scheme defines " '[s]exual purpose' " as "a purpose of the defendant in committing the felony was to engage in sexual contact or sexual intercourse with another person without that person's consent. A sexual purpose need not be the sole purpose of the commission of the felony." General Statutes § 54-250 (12). " 'Sexual contact' means any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person." General Statutes § 53a-65 (3). " 'Intimate parts' means the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts." General Statutes § 53a-65 (8).

occurred and been reported to her earlier that day. The victim's mother informed police that the defendant had been her boyfriend for the past five years and that he resided with her and her daughter at their home. The police interviewed the victim, who relayed the following account to them. After the defendant returned home from work on August 25, he offered to give the victim a back massage. She agreed and they went to the bedroom that the defendant shared with the victim's mother. The victim lay face down on the bed and watched television while the defendant sat on top of her, straddling her buttocks and legs, and gave her a back massage. In so doing, he also rubbed her sides near her breasts, but did not touch her anywhere else. She believed that the defendant had masturbated while giving her the massage because there was vibrating motion that seemed unrelated to the massage, and afterward the defendant wiped her back with a towel that was on the bed. Following the massage, the defendant quickly left the room, gave the victim $100 and told her that the massage was "their secret." Later that day, when the victim's mother telephoned home, the victim told her mother what had happened and stated that she needed to take a shower because she felt violated. The victim further reported to the police that, over the previous two years, the defendant had given her numerous massages and, on one of these occasions, had given her $50. During these massages, the victim and the defendant usually were wearing only their underwear. On August 25 and in the past, the defendant rubbed his penis against the victim's buttocks but she did not believe that his penis was erect.

In a subsequent interview with the police, the defendant provided the following account. The defendant admitted that on August 25, 2005, he had given the victim a massage while wearing only a pair of boxer shorts, that he had removed the boxer shorts the victim

had worn over her underwear to give her the massage, and that he had become sexually aroused and had ejaculated into a towel. He further admitted that, approximately three times in the preceding six months, during the course of giving the victim a massage, his penis had come out of his boxer shorts "on its own" because he became sexually aroused. The defendant stated that the victim had not done anything to him during these occasions and that he never had touched her in an inappropriate manner. He admitted that he had given her money because he felt bad that he had "made the mistakes" and had asked her to keep it a secret. The defendant admitted all of these facts but denied that there had been masturbation involved when the victim was fifteen years old.

The trial court accepted the defendant's guilty plea, after informing the defendant that the plea could expose him to the possibility of having to register as a sex offender if the court found that the felony had been committed for a sexual purpose. Prior to the plea canvass, the court had informed the parties that it would rely on "the entire picture," not just argument of counsel, to make its sentencing decision, including whether there should be sexual offender registration. On January 3, 2007, after conducting a hearing and making certain findings, the trial court sentenced the defendant to a term of imprisonment of five years, suspended after ten months, followed by five years of probation. In addition to the standard conditions of probation, special conditions were imposed, including that the defendant: be evaluated for a sexual offender treatment program and, if required to participate, successfully complete such a program; be prohibited from having any contact with the victim or any members of her immediate family; be prohibited from having any unsupervised contact with any child under the age of sixteen years, unless such contact has been preapproved by both the depart-

ment of adult probation and the sex offender treatment provider; and be prohibited from residing in any residence in which a child under the age of sixteen is living without prior approval of the department of adult probation and the sex offender treatment provider. The court further ordered the defendant to register as a sex offender for a period of ten years, to commence upon his release from incarceration. The defendant appealed from the judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. Additional facts will be set forth as needed to address the defendant's claims.

I

The defendant first claims that the trial court abused its discretion in ordering him to register as a sex offender. The defendant's challenge is based on the premise that, because the recognized purpose of the sex offender registry is to protect the public's safety, the decision to require registration necessarily must be predicated on a conclusion that the defendant poses a danger of reoffending.[4] The defendant claims that, in

[4] We note that the defendant's brief to this court has cited extensively to research that challenges the premise on which the enactment of various states' Megan's Law provisions, including Connecticut's, was based. Specifically, the defendant cites numerous social science studies and statistics collected, in part, by the United States Department of Justice as well as the Canadian Public Works and Government Services, to support his assertion that "[t][he popular myth that sex offenders reoffend at significantly higher rates than the remaining criminal population . . . is demonstrably false."

We acknowledge that the defendant's arguments and the supporting research findings may be worthy of further consideration. As the defendant conceded during oral argument before this court, however, these are essentially policy arguments that more properly are raised before our state legislature in support of reconsideration and reformation of the statutory scheme governing sex offender registration. The defendant nonetheless requests that we take these studies into consideration when considering whether the trial court abused its discretion in ordering him to register. We decline to do so, however, because this information was not presented to the trial court in the present case. The defendant had an opportunity to advance these arguments to the trial court and to request that it consider the recent

the present case, such a conclusion is improper because he presented evidence to the court, from his treating physician and other witnesses, that he poses little to no risk of reoffending, that he has no prior criminal record, that he has accepted responsibility for the wrongfulness of his actions and that he has a supportive family and a long, successful work history in the area. In response, the state maintains that this claim is without merit because the challenged order was a reasonable exercise of the trial court's broad discretion. Specifically, the state contends, first, that the language of § 54-254 (a) and our case law do not support the defendant's assertion that an order to register as a sex offender *must* be based on a finding that the defendant poses a risk for reoffending or a danger to public safety. Rather, the state contends, "a finding by the court that a crime was committed for a sexual purpose *alone justifies an order of registration* because such a finding triggers the legislative presumption embodied in § 54-254 (a) that such an offender poses a risk of reoffending and a potential danger to the public." (Emphasis added.) Second, the state contends that, even if the risk of reoffending is an appropriate consideration, "the information of record . . . amply supported the court's order of registration and did not compel the conclusion that the defendant posed no risk of reoffending and no potential danger to public safety."

To resolve this claim, we must answer two questions: whether a finding of a felony committed for a sexual

developments in the research on recidivism in making its discretionary determination. He failed to make such a request. To review the trial court's exercise of discretion with the benefit of more information than was available to it when it ordered the defendant to register would amount to an unfair attack on the trial court's decision. Cf. *State* v. *Canales*, 281 Conn. 572, 586, 916 A.2d 767 (2007) ("[c]onsideration of . . . evidence for the first time on appeal, without the benefit of effective state rebuttal or trial court determinations of credibility and fact, would usurp the trial court's role as the finder of fact").

purpose alone is enough to order registration under the mandates of § 54-254 (a); and whether, if some other consideration is required, the trial court abused its discretion in ordering registration in light of the evidence before it. We conclude that the statute mandates consideration of other factors, and that the trial court did not abuse its broad discretion in imposing registration on this defendant.

In construing § 54-254 (a), General Statutes § 1-2z "directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *State* v. *Bletsch*, 281 Conn. 5, 16, 912 A.2d 992 (2007). As with any question of statutory construction, our review of this threshold question as to the requirements of the statute is plenary. See id.

Because we are not writing on a blank slate when construing this law, however, we begin with some general background on Megan's Law, found in chapter 969 of the General Statutes, §§ 54-250 through 54-261. We previously have had an opportunity to examine this state's Megan's Law and have made the following observations. The legislature enacted the law to "protect the public from sex offenders." *State* v. *Kelly*, 256 Conn. 23, 95, 770 A.2d 908 (2001); accord *State* v. *Waterman*, 264 Conn. 484, 490, 825 A.2d 63 (2003) (intent of Megan's Law was "to alert the public by identifying potential sexual offender recidivists when necessary for public safety"). The requirement to register as a sex offender is regulatory, rather than punitive, in nature. See, e.g., *State* v. *Kelly*, supra, 94 (adopting reasoning of *Doe* v. *Pataki*, 120 F.3d 1263, 1285 [2d Cir. 1997], cert. denied,

522 U.S. 1122, 118 S. Ct. 1066, 140 L. Ed. 2d 126 [1998], reaching this conclusion).

The law designates four classes of offenses: (1) the victim is a minor or the sexual offense is nonviolent; General Statutes § 54-251; (2) the sexual offense is violent; General Statutes § 54-252; (3) the sexual offense was committed in another jurisdiction; General Statutes § 54-253; or (4) the felony was committed for a sexual purpose. General Statutes § 54-254. Although we previously have stated that "[o]nly under the last classification is the trial court given discretion whether to impose the registration requirement"; *State* v. *Waterman,* supra, 264 Conn. 490; we did not explain the basis for that conclusion. The text of the statutory scheme, however, makes that distinction clear. The first three provisions provide that a defendant "shall" register; see General Statutes §§ 54-251 (a), 54-252 (a) and 54-253 (a); whereas, by contrast, § 54-254 (a), the provision at issue in the present case, provides in relevant part that "[a]ny person who has been convicted . . . of any felony that the court finds was committed for a sexual purpose, *may be required* by the court upon release into the community . . . to register . . . with the [c]ommissioner of [p]ublic [s]afety . . . ." (Emphasis added.) We consistently have observed that, "as opposed to definitive words, such as must or shall, which ordinarily express legislative mandates of a nondirectory nature . . . the word may [generally] imports permissive conduct and the conferral of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Bletsch,* supra, 281 Conn. 17; see also id., 18 ("may" is construed as directory "[o]nly when the context of legislation permits such an interpretation and if the interpretation is necessary to make a legislative enactment effective").

We further observe that the text of § 54-254 (a) indicates that there are two threshold requirements that

must be satisfied prior to a defendant's being exposed to the possibility of sex offender registration. First, the statute applies only to a "person who has been convicted . . . of [a] felony . . . ."[5] General Statutes § 54-254 (a). Second, the trial court must make a finding that the felony "was committed for a sexual purpose . . . ." General Statutes § 54-254 (a). Only after these two factual predicates have been satisfied does the statute provide that the person "*may* be required by the court" to register. (Emphasis added.) General Statutes § 54-254 (a). Therefore, § 54-254 (a) reflects that, even after a person has been convicted of a felony and after the court finds that this felony was committed for a sexual purpose, the court still may elect not to order registration on the state's sex offender registry. See *State* v. *Bletsch*, supra, 281 Conn. 18 (determining that language in § 54-251 [b] providing that court "may exempt" persons otherwise mandated to register under § 54-251 [a] confers discretion).

It is clear from the discretion vested in the trial court under § 54-254 (a) that a finding of sexual purpose alone is not sufficient to support a registration requirement. Although this court has recognized that Megan's Law was enacted to "alert the public by identifying potential

[5] We note that § 54-254 (a) expressly applies to a defendant who has been convicted by virtue of entering a plea of guilty, providing in relevant part that, "[i]f the court finds that a person has committed a felony for a sexual purpose and intends to require such person to register under this section, prior to accepting a plea of guilty or nolo contendere from such person with respect to such felony, the court shall (1) inform the person that the entry of a finding of guilty after acceptance of the plea will subject the person to the registration requirements of this section, and (2) determine that the person fully understands the consequences of the plea. . . ." Although the statute indicates that, when a defendant intends to plead guilty, the court has a responsibility to make its finding as to sexual purpose *before* accepting the defendant's plea, in the present case, the trial court accepted the defendant's plea before making this finding. In his brief and at oral argument to this court, the defendant, however, expressly has asserted that he waives any claim that his plea canvass was defective.

sex offender recidivists" and was based on the view that sex offenders have a greater likelihood to reoffend than other criminal actors; *State* v. *Waterman*, supra, 264 Conn. 490; see also *State* v. *Bletsch*, supra, 281 Conn. 23 n.18; the express terms of § 54-254 (a) indicate a legislative intent to have the court consider factors other than that the felony was committed for a sexual purpose. If the legislature had intended for a finding of sexual purpose alone to require an order of registration, it would not have granted courts the discretion to decide whether to order registration *after making such a finding.* In other words, the discretion conferred on the court to impose the registration requirement *after* making a finding of sexual purpose necessarily presupposes that some additional factor should be considered, even if that factor is established by the same evidence that supported a finding of sexual purpose. To read § 54-254 (a) otherwise would be contrary to well settled rules of statutory construction, as it would render the grant of discretion superfluous and, in essence, treat § 54-254 (a) the same as the mandatory provisions of Megan's Law, despite clear textual evidence to the contrary. See *Dinan* v. *Marchand*, 279 Conn. 558, 577–78, 903 A.2d 201 (2006) ("[t]his court will not substitute its own language for that chosen by the legislature"); *State* v. *Ball*, 226 Conn. 265, 280, 627 A.2d 892 (1993) ("this court lacks the authority to reshape public policy by construing a statute in a manner that alters its inherent meaning"); see also *State* v. *Peeler*, 271 Conn. 338, 434–35, 857 A.2d 808 (2004) (court will not construe statute to render any part superfluous), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). Moreover, we do not read § 54-254 (a) as prescribing a rebuttable presumption of risk to the public safety upon a finding of sexual purpose, as the legislature generally provides for such a presumption in express terms; see, e.g., General Statutes §§ 53a-119 (15), 53a-119a, 53a-127c (a), 54-

56d (b) and 54-64f (c); or uses other terms of comparable import as it has elsewhere in Megan's Law. See General Statutes § 54-251.[6]

Having concluded that the trial court exercises its discretion in deciding whether to require registration under § 54-254 (a) after making a finding that the felony was committed for a sexual purpose, we turn to the defendant's claim that the evidence did not support an order to register as a sex offender. We conclude that, in light of the information presented to the court, the parties' arguments to the court that centered on the defendant's risk of reoffending and the court's statements as to its view of that information, there is nothing in the record to suggest that the court abused its discretion by considering improper or irrelevant factors in deciding to order registration. See *State* v. *Jacobson*, 283 Conn. 618, 627, 930 A.2d 628 (2007) ("abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided [the matter] based on improper or irrelevant factors" [internal quotation marks omitted]); cf. *State* v. *Fowlkes*, 283 Conn. 735,

---

[6] Subsections (b) and (c) of § 54-251 set forth limited discretionary exemptions to the mandatory registration requirement under subsection (a) of that statute for a "person who has been convicted or found not guilty by reason of mental disease or defect of a criminal offense against a victim who is a minor or a nonviolent sexual offense . . . ." Section 54-251 provides in relevant part: "(b) Notwithstanding the provisions of subsection (a) of this section, the court may exempt any person who has been convicted or found not guilty by reason of mental disease or defect of a violation of subdivision (1) of subsection (a) of section 53a-71 from the registration requirements of this section if the court finds that such person was under nineteen years of age at the time of the offense and that registration is not required for public safety.

"(c) Notwithstanding the provisions of subsection (a) of this section, the court may exempt any person who has been convicted or found not guilty by reason of mental disease or defect of a violation of subdivision (2) of subsection (a) of section 53a-73a or subdivision (2) of subsection (a) of section 53a-189a, from the registration requirements of this section if the court finds that registration is not required for public safety. . . ."

743, 930 A.2d 644 (2007) ("[t]he purpose of probation . . . is to reform the defendant and to preserve public safety"). Although the defendant did not ask the court to make an express finding as to future dangerousness, either before or after sentencing, it seems clear from the record that the trial court did weigh this factor in deciding to order registration.

We begin with the appropriate standard of review. We previously have not been called on to review a court's discretionary sex offender registration order pursuant to § 54-254 (a). Our review of such discretionary determinations is well settled, under which the trial court's order "will be upset only for a manifest abuse of discretion."[7] *State* v. *Bletsch*, supra, 281 Conn. 19. "When reviewing claims under an abuse of discretion standard, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) Id.

Despite our characterization of sex offender registration as neither punitive nor a sentencing factor; *State* v. *Waterman*, supra, 264 Conn. 489; we have determined that the law governing the scope of information that a sentencing court may consider in fashioning sentences also applies to the information that a court may consider in making sex offender registration decisions. See *State* v. *Bletsch*, supra, 281 Conn. 20. This standard is appropriate for review of a registration decision because it

---

[7] We note that the trial court's finding as to sexual purpose, which the defendant does not contest, constitutes a factual finding that would be reviewed under the clearly erroneous standard. See *State* v. *Bletsch*, supra, 281 Conn. 18–19 and 19 n.15 (age requirement and whether defendant poses safety risk under § 54-251 [b] are factual findings reviewable under clearly erroneous standard).

is similar to a sentencing court's determination with respect to conditions of probation. Cf. *State* v. *Misiorski*, 250 Conn. 280, 287, 738 A.2d 595 (1999) (court must have broad discretion to fashion conditions necessary to achieve probation objectives to foster offender's rehabilitation and to preserve public's safety).

It is well settled that a sentencing judge has "broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial. . . . Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information. . . . Finally, although a trial court's discretion is not completely unfettered, and information may be considered as a basis for a sentence only if it has some minimal indicium of reliability, we have stated that [a]s long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Bletsch*, supra, 281 Conn. 20–21.

The following additional facts are relevant to the resolution of the defendant's challenge to the trial court's exercise of its discretion in imposing the registration requirement. At the defendant's January 3, 2007 sentencing hearing, the defendant had several people make statements to the court on his behalf. With respect to the possibility of having to register as a sex offender, the defendant relied foremost upon the observations and opinion of Susan Sgroi, a physician with extensive experience treating sexual offenders, who began treating the defendant prior to the date of the arrest warrant and, at the time of sentencing, had been treating him

for more than one year. Sgroi informed the court that: (1) "in recent months, my observation is that [the defendant] has made as full an admission of responsibility for the inappropriateness of his behavior with the victim as I could wish"; (2) "[the defendant] from the outset with me . . . has expressed great concern for the victim and unwillingness to have this matter proceed to trial and awareness of how difficult things have been for her already"; (3) "[the defendant] did not have any of the factors that are part of [the actuarially based] risk assessment tool that identify a person as being at higher risk to reoffend . . . [and] he initially scored zero on this risk assessment tool"; and (4) "my understanding of the original intent of sex offender registries was that they were supposed to be for people who were predatory. . . . I do not think that [the defendant] is the kind of person that the sexual offender registry was originally intended for. I would have no qualms whatsoever about his being in a community area where there were children and no worries about him going after any child under those circumstances." In addition to Sgroi's testimony, the defendant, his mother, a friend and a local business associate addressed the court. In sum, the observations they pressed the court to consider included that the defendant felt remorse for his actions toward the victim, that his behavior was an aberration, that he has the support of a loving family, that he has benefited significantly from his psychological treatment and that he has a long-standing and successful work history in the community.

The state urged the court to view the defendant in a different light. It presented the victim's mother, who described to the court the harmful effect that the defendant's two years of sexual abuse had had upon her daughter's emotional and physical well-being, and contended that her daughter never would trust another man to be a father figure to her. She contended that

his conduct had been especially harmful in light of the fact, known to the defendant when he perpetrated this abuse, that the victim had been sexually abused when she was a young child. In its argument to the court, the state disagreed that the defendant had taken responsibility for his actions and contended that he had tried to minimize his actions as an isolated incident. The state pointed out that the defendant still denied that he had masturbated while massaging the victim prior to the age of sixteen, and admitted doing so only on one occasion, August 25, 2005, when forensic evidence would have been present to prove that fact. For purposes of determining punishment and determining if the defendant presented a risk to the community, the state also asked the court to take into account a signed letter from the defendant's adopted daughter alleging that the defendant had molested her years earlier when she was between the ages of four and ten.[8]

---

[8] The parties acknowledge that, at the time of the sentencing hearing, this letter contained unproven allegations. At his sentencing hearing, the defendant had responded to this allegation by asserting that he and his former wife had had a contentious custody dispute in 2006, involving, inter alia, the responsibility for college expenses for the adopted daughter. Defense counsel stated to the court that, at the time he first was apprised of any molestation allegations, he believed it to be the posturing of an aggressive attorney trying to prevail in a custody and support disagreement. The state explained to the court that the defendant's former wife had contacted the state about these allegations the previous year. She had told the state that her daughter had made vague statements about abuse at the time that it was alleged to have occurred, and only recently had admitted it after the mother learned from the daughter's best friend that years earlier the daughter had confided in the friend about the abuse. The state also offered an explanation as to why the defendant's adopted daughter finally had decided to make the allegations known to the state.

After Sgroi was made aware of these allegations, she acknowledged that they were disturbing, but adhered to her prior recommendation, stating that, even "if everything in the letter that is alleged is true, [the defendant] still scores one as opposed to zero on that risk assessment tool, which makes his score comparable to that of individuals who are in the lowest risk category of reoffending."

Also at the sentencing hearing, both parties specifically addressed whether the felony to which the defendant had pleaded guilty had been "committed for a sexual purpose," the prerequisite to sex offender registration. General Statutes § 54-254 (a); see footnote 3 of this opinion for pertinent definitions related to sexual purpose. Defense counsel argued that, "[i]n this case . . . there was no sexual contact between the [defendant and the victim]. . . . [T]here was not a sexual purpose to engage in sexual contact or sexual intercourse." He suggested that, "[w]hatever [the defendant's] purpose, it seems it was to become aroused. . . . It was not to have sexual contact or sexual intercourse." The state pointed to the victim's account and the defendant's own admissions to the police to demonstrate a sexual purpose in the defendant's actions.

The trial court rejected the defendant's view of the evidence and concluded: "There's no question whatsoever in my mind . . . that what [the defendant] was doing was for his own sexual gratification and there was a sexual purpose. He had done this before. . . . If you've been aroused the first time, when you go to do it the second time, it's the same thing, and if you do it the third time, it's the same thing. So, each time he did that, he was being aroused and he knew he was going to become aroused because that's when it happened on prior occasions." The court specifically found that there had been sexual contact on numerous occasions when the defendant had rubbed his penis, even if not erect, against the victim's body while she was wearing only underwear.

Having found that the defendant had committed the felony for a sexual purpose, the court then turned to the question of sentencing generally and sex offender registration specifically. The defendant asked the court to take Sgroi's opinion into consideration. The state expressed concern that the defendant and his family appeared to speak of his conduct as a single departure

from his normal behavior, reiterated to the court that "the evidence suggests this was not an isolated incident" and urged the court to consider that fact in making its registry determination. When announcing its decision, the trial court first noted the significant amount of material that it had taken into consideration, including the presentence investigation report, letters of recommendation provided by the defendant, the December, 2006 letter alleging prior sexual abuse of the defendant's adopted daughter provided by the state and the statements made to the court at the hearing. After imposing the defendant's sentence and probation conditions, the court stated that it "does find under the circumstances that registration in this case is a significant part of the overall picture. I think it is important, and I especially now think it's even more important given the affidavit from the child who is alleging that she was abused by this defendant a number of years ago. Sex offender registration will be required of the defendant for a period of ten years."

With these facts in mind, we now turn to the question of whether the trial court reasonably concluded that registration was appropriate under the facts and circumstances of this case. The parties agree that, in exercising its discretion with respect to sex offender registration, the trial court can consider a wide breadth of information, including that which would not be admissible at trial. The crux of their disagreement rests on whether the information presented was sufficient to allow the court to make a determination that the defendant should be required to register. We agree with the state that the evidence supports the court's discretionary determination.

The record before the trial court demonstrates that the defendant had engaged in and promoted sexual situations with the victim repeatedly before and after her sixteenth birthday, that he had shared a father-like

relationship with her and that his adopted daughter also had accused him of molestation.[9] Sgroi, the defendant's treating physician had concluded that, if the adopted daughter's allegation was true, the defendant presented a low risk of reoffending, but not no risk, and specifically had agreed that the state's recommended probation conditions that the defendant not be with children in an unsupervised capacity and not live with children were "very appropriate." Under the totality of these circumstances, we conclude that the trial court's order that the defendant register as a sex offender was reasonable and, therefore, not an abuse of discretion.[10]

---

[9] Despite the defendant's acknowledgment at oral argument to this court that the trial court properly could consider evidence that would have been inadmissible at trial, he complains in his brief to this court that the trial court improperly based its decision, in part, on his adopted daughter's letter because it is "a hearsay statement from an out-of-state lay declarant subjected to neither confrontation nor cross-examination by the defendant." Such a complaint more properly would be advanced, however, if the defendant had challenged the scope of information that the court could consider in exercising its discretion. Moreover, as we previously have observed, in making registration determinations, the court may consider information as long as it has "some minimal indicium of reliability." *State* v. *Bletsch*, supra, 281 Conn. 20–21. We note that the trial court acknowledged that the allegation had not, and could not, be proved at that point, and that it merely was taking into account the fact that the allegation had been made.

[10] The defendant advanced two additional arguments in his brief to this court in support of his claim that the trial court abused its discretion in ordering him to register, both of which we decline to address for the following reasons. First, the defendant contends that "[r]egistration serves only the counterproductive purpose of stigmatizing him." The defendant suggests that registration will impede "positive social interaction, educational and employment opportunities, and the formation of healthy relationships . . . [and] can serve to prevent him from functioning as a valuable member of society, and thereby avoiding future offenses, sexual and nonsexual alike." Although, as noted in the text of this opinion, we previously have observed that the defendant's successful rehabilitation may be relevant to the court's exercise of discretion, in the present case, the record does not reveal any indication that the defendant advanced this argument before the trial court. Thus, we decline to address it for the first time on appeal. See *State* v. *Canales*, supra, 281 Conn. 586; *State* v. *Azukas*, 278 Conn. 267, 282, 897 A.2d 554 (2006).

Second, the defendant contends that requiring individuals like him to register is also counterproductive because it results in an overinclusive

## II

We next turn to the defendant's claim that the trial court's failure to hold an evidentiary hearing prior to ordering him to register as a sex offender violated his right to due process. Although the defendant asserts a violation under both the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution, he has not provided an independent analysis under the state constitution, and we therefore limit our consideration to the dictates of the federal constitution. See, e.g., *Walsh* v. *Jodoin*, supra, 283 Conn. 200 n.14. The defendant acknowledges that he did not raise an objection before the trial court or request such a hearing, and, accordingly, seeks to prevail on this unpreserved claim under either *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[11]

registry that "will serve only to ensure that the public is in a perpetual state of panic over sex offenders." He further asserts that this overinclusion and "failure to exclude low risk and (in this case) nonrisk defendants from the registry will nullify its purpose, by eradicating the public's ability to differentiate those individuals who represent actual threats from those who do not." We deem this argument to be more akin to a general policy argument regarding who should be included in a registry. As we have discussed in the text of this opinion, our statutory scheme directs that registration will hinge on either conviction alone, or on the exercise of a trial court's discretion after specified factual findings are made. The defendant's concerns that this statutory scheme results in an overinclusive and ineffectual registry is not made in the posture of a constitutional claim, and we therefore decline to address it because such policy considerations must be directed to our state legislature. See *State* v. *George J.*, 280 Conn. 551, 570, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007); *State* v. *Cobb*, 251 Conn. 285, 508, 743 A.2d 1 (1999).

[11] In *Golding*, this court concluded that "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Knybel*, 281 Conn. 707, 712–13, 916 A.2d 816 (2007). "The first two prongs of *Golding* involve a determination of whether the claim is reviewable; the second two . . . involve a determina-

the plain error doctrine or this court's supervisory authority. The state has not addressed the merits of the defendant's argument, asserting instead that this claim is not reviewable because the defendant's participation in the sentencing hearing constituted an implicit waiver of the claim. The defendant responds to the state's waiver claim with the contention that *Golding* improperly would be circumvented if his mere participation in a hearing, without any further overt indication that he agreed that the procedure was proper, was construed as an implicit waiver of a constitutional right. We do not construe the defendant's participation in the sentencing proceeding as an implicit waiver of his due process claim, and conclude that the defendant has met the parameters for *Golding* review. We further conclude, however, that the defendant has not established a due process violation.

It is useful, at the outset, to bring the defendant's due process claim into sharper focus—specifically, the defects that he has identified, and more importantly, those aspects of the proceeding that the defendant does not challenge. Although the defendant contends that the text of § 54-254 (a) indicates that the legislature intended for an evidentiary hearing on sexual purpose to precede the acceptance of a guilty plea on the underlying felony; see footnote 5 of this opinion; he does not assert that the failure to hold such an evidentiary hearing violated the statute. Nor does he challenge the trial court's finding that the felony had been committed for a sexual purpose. Moreover, the defendant expressly has disavowed any claim that his plea canvass was constitutionally defective. Rather, he contends that due process required an adversarial evidentiary hearing, at which he could have cross-examined witnesses, because "the parties were in considerable disagreement

tion of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 500, 903 A.2d 169 (2006).

about the relevant facts" and adversarial examination of the witnesses would have aided the court in assessing which witnesses to credit. We conclude that the defendant received any process to which he was due.

"To formulate a claim under the [due process clause of the fourteenth amendment to the United States constitution], a [claimant] must demonstrate that he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest. . . . [P]rocedural due process questions [are examined] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [s]tate; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . . . [O]nce it is determined that due process applies, the question remains what process is due. . . . [D]ue process is flexible and calls for such procedural protections as the particular situation demands." (Citations omitted; internal quotation marks omitted.) *Tele Tech of Connecticut Corp.* v. *Dept. of Public Utility Control,* 270 Conn. 778, 806 n.25, 855 A.2d 174 (2004); see also generally *Mathews* v. *Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (setting forth three-pronged test used to determine what process is due).

The defendant relies on an Appellate Court case in which that court concluded that due process requires a hearing to enable the court to make a finding as to whether the felony was committed for a "sexual purpose" in accordance with § 54-254 (a) because the registration scheme satisfies the so-called "stigma plus" test, thus giving rise to a cognizable liberty interest. See *State* v. *Pierce,* 69 Conn. App. 516, 530–33, 794 A.2d 1123 (2002). We reversed that decision, however, on the ground that the Appellate Court improperly had invoked the plain error doctrine because it raised the due process issue sua sponte and the trial court's

actions were in conformity with a presumptively valid statute, and we therefore did not express an opinion as to whether a liberty interest was implicated. *State v. Pierce*, 269 Conn. 442, 452–54, 849 A.2d 375 (2004). We also note that the Appellate Court's decision in *Pierce* rested largely on the Second Circuit's decision in *Doe* v. *Dept. of Public Safety ex rel. Lee*, 271 F.3d 38, 57–60 (2d Cir. 2001), reaching the same conclusion as to the stigma plus test; see also id., 58–60 (noting split among courts on that issue); which the United States Supreme Court thereafter reversed without addressing the question of whether registration under our scheme constituted stigma plus.[12] See *Dept. of Public Safety* v. *Doe*, 538 U.S. 1, 7, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003) ("even assuming, arguendo, that [the] respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute").[13] In light of the Supreme Court's decision and

[12] Subsequent to the Supreme Court's decision, some courts have concluded that sex offender registration does not implicate a liberty interest for due process purposes under schemes that mandate registration. See, e.g., *Doe* v. *Dept. of State Police*, 490 F.3d 491, 502 (6th Cir. 2007); *Doe* v. *Moore*, 410 F.3d 1337, 1342 and n.3 (11th Cir.), cert. denied, 546 U.S. 1003, 126 S. Ct. 624, 163 L. Ed. 2d 506 (2005). Others have concluded to the contrary under a scheme similar to the mandatory aspect of our scheme. See, e.g., *Milks* v. *State*, 894 So. 2d 924, 927 n.3 (Fla.), cert. denied, 546 U.S. 833, 126 S. Ct. 368, 163 L. Ed. 2d 86 (2005). Other courts have concluded that a liberty interest is implicated under schemes that do not predicate registration on a conviction for a sexual offense. See, e.g., *Gwinn* v. *Awmiller*, 354 F.3d 1211, 1222–23 (10th Cir.), cert. denied, 543 U.S. 860, 125 S. Ct. 181, 160 L. Ed. 2d 100 (2004); *Coleman* v. *Dretke*, 409 F.3d 665, 669 (5th Cir.), cert. denied, 546 U.S. 938, 126 S. Ct. 427, 163 L. Ed. 2d 325 (2005).

[13] In *Dept. of Public Safety* v. *Doe*, supra, 538 U.S. 4, the United States Supreme Court considered a procedural due process challenge to our scheme and observed that "Connecticut . . . has decided that the registry requirement shall be based on the fact of previous conviction, not the fact of current dangerousness." In light of that conclusion, the court held that a defendant had no right to a hearing on his future dangerousness because the statutory scheme did not recognize that factor as a relevant consideration for sex offender registration. Id., 7–8. Because "the law's requirements turn on an offender's conviction alone—a fact that a convicted offender has

our conclusion in part I of this opinion that § 54-254 (a) does not mandate a finding of future dangerousness as a predicate to registration, to the extent that the defendant claims that due process mandates certain procedures when the trial court makes such a finding, his claim must fail. Indeed, we point out that the Appellate Court's decision in *Pierce* related to a factual finding that is a statutory predicate to the possibility of exposure to registration, not the trial court's exercise of discretion after making that finding. To the extent that the defendant's claim is more generally related to the due process attendant to such discretionary decisions, however, we need not decide in the present case whether registration under § 54-254 (a) satisfies the stigma plus test, because, even if we were to assume that the registration requirement implicates a constitutionally cognizable interest, the procedure afforded to the defendant clearly was not constitutionally deficient.

As we have noted previously herein, we take guidance from the case law addressing sentencing and the attendant imposition of probation conditions. It is well settled that a defendant does not have a constitutional right to cross-examine witnesses who provide statements for the court's consideration in noncapital sentencing proceedings. See *Williams* v. *New York*, 337 U.S. 241, 242–52, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949); *Farrow* v. *United States*, 580 F.2d 1339, 1353 n.25 (9th Cir. 1978); see also *United States* v. *Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005) (concluding that there is no constitutional right to confront witnesses by way of cross-examination in noncapital sentencing proceeding and

already had a procedurally safeguarded opportunity to contest," the court reasoned, "any hearing on current dangerousness is a bootless exercise." Id. In our view, the Supreme Court's interpretation of our statutory scheme is limited to the mandatory registration provisions, as the exemptions to registration under § 54-251 (b) and (c) expressly require the trial court to make a finding regarding the risk to public safety before it may exempt a defendant from registry requirements.

citing six other Circuit Courts of Appeal in accord with that conclusion), cert. denied, 547 U.S. 1034, 126 S. Ct. 1604, 164 L. Ed. 2d 325 (2006). Nonetheless, "this [does] not mean that sentencing procedure[s] [are] immune from scrutiny under the due-process clause. *Williams* [v. *New York*, supra, 252 n.18]. . . . See, e.g., *Mempa* v. *Rhay*, 389 U.S. 128, 137, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967) (due process right to counsel at sentencing); *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (due process right to obtain evidence favorable to the accused, held by the government and material either to guilt *or to punishment*) . . . *Townsend* v. *Burke*, 334 U.S. 736, 741, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948) (due process right to ensure that sentence was not based upon assumptions concerning [defendant's] criminal record which were materially untrue); cf. *Gardner* v. *Florida*, 430 U.S. 349, 362, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) (plurality) (qualifying *Williams* v. *New York* [supra, 241] in the context of capital cases and holding that [the] defendant had a due process right not to receive a death sentence based on information that he had no opportunity to deny or explain)." (Emphasis in original; internal quotation marks omitted.) *United States* v. *Hamad*, 495 F.3d 241, 247 (6th Cir. 2007). Indeed, our rules of practice are intended to ensure that a defendant receives process that he is due during sentencing. See Practice Book § 43-10 (1); see also Practice Book § 43-16 (providing for submission of supplemental documents by defense counsel). We note that, although the Second Circuit concluded that a defendant was entitled to a hearing prior to being ordered to register as a sex offender with respect to a finding that it had concluded was required under the statutory scheme, it expressly declined to decide what process was due. *Doe* v. *Dept. of Public Safety ex rel. Lee*, supra, 271 F.3d 62.

In the present case, before the trial court imposed the registration requirement, it permitted the defendant,

his family and friends to speak on the defendant's behalf as to whatever facts and opinions they thought might bear on the trial court's decision. The defendant also provided the testimony of his treating physician, who offered her expert opinion as to the propriety of ordering registration. Although the defendant challenges the credibility of his adopted daughter's letter alleging previous acts of abuse that was offered by the state, he was permitted to present argument as to why those accusations should be discredited. See footnote 8 of this opinion. He does not claim that he was prevented from offering any evidence to the court that would have shown those allegations to be false. See *United States* v. *Malcolm*, 432 F.2d 809, 816 (2d Cir. 1970) ("[m]isinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process"). Nor does the defendant claim that he did not have notice of any information that the state presented to the court in order to rebut that information adequately.

"Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance. *Williams* v. *Oklahoma*, 358 U.S. 576, 584, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959)." *State* v. *Bletsch*, supra, 281 Conn. 20. This court has concluded that a trial court properly may rely on facts alleged by a victim in an unsworn statement in an arrest warrant to determine whether the defendant posed a risk to public safety, as long as that statement contained a minimum indicia of reliability. Id.; see also *Williams* v. *New York*, supra, 337 U.S. 246 (noting that, dating from time before American colonies became one nation, "[o]ut-of-court affidavits have been used frequently" in sentencing proceedings). Indeed, our rules

of practice specifically provide for the provision of a presentence investigation report. See Practice Book §§ 43-3 through 43-9.

The defendant does not contend that the letter at issue in the present case failed to meet this modest threshold. Rather, he appears to suggest that the failure to permit him to confront and cross-examine persons providing statements to the court renders contested evidence unreliable per se. We disagree. As we explained in part I of this opinion, "[g]enerally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. . . . Consistent with due process the trial court may consider responsible unsworn or out-of-court information relative to the circumstances of the crime and to the convicted person's life and circumstance. . . . It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. . . . As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. . . . As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986). In light of the defendant's claim and the procedure afforded, his due process claim fails.[14]

---

[14] In his brief to this court, the defendant cites several cases from other jurisdictions that are inapposite, and we therefore need not address them. Several of these cases address the question of whether it violates due process to create a statutory presumption of dangerousness upon conviction and to impose a burden on the defendant to prove that he is not dangerous. The schemes at issue in those cases differ in significant and material ways from ours. The defendant also cites one case that addresses a failure to

The judgment is affirmed.

In this opinion NORCOTT, PALMER and VERTE-FEUILLE, Js., concurred.

ROGERS, C. J., concurring. I agree with the majority's conclusion that the record in this case supports a finding that the defendant, Arthur H., would pose a risk to public safety and that that finding is sufficient to support the trial court's order that the defendant register as a sex offender pursuant to General Statutes § 54-254 (a). I write separately because I am troubled by the portion of the majority opinion rejecting the state's claim that § 54-254 (a) creates a presumption that persons convicted of a felony committed for a sexual purpose pose a risk to the public safety. I would conclude that there is no need to reach that question because the record in the present case contains independent evidence to support a finding that the defendant posed a risk to the public safety, beyond the mere fact that the defendant committed a felony for a sexual purpose.

provide process mandated by statute and one in which the court concluded that it was improper to allow an out-of-court statement in the form of a report to be considered because it lacked reliability. None of these cases, however, raise issues or offer analysis pertinent to the issue before us.