STATE OF CONNECTICUT *v.* JEFFREY DAVIS
(AC 31003)

Harper, Robinson and Dupont, Js.

Argued March 11—officially released July 27, 2010

*Victoria Pells*, assistant public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, *Jayne F. Kennedy*, deputy assistant state's attorney, and *James Dever*, certified legal intern, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Jeffrey Davis, appeals from the trial court's order, following a pretrial hearing, that he be involuntarily medicated to render him competent to stand trial. On appeal, the defendant claims that the court improperly found that his alleged violation of General Statutes § 54-252 was serious enough to give the government an important interest in requiring that he be medicated so that he would be competent to stand trial. We disagree and, accordingly, affirm the order of the trial court.

The following facts and procedural history are relevant to our resolution of the issue this case presents. On April 30, 2008, the defendant appeared in court on a violation of § 54-252[1] charge for failure to register as a sex offender.[2] On that date, the court ordered a competency examination pursuant to General Statutes § 54-56d. On May 29, 2008, after the competency hearing was completed, the court, *Norko, J.*, found the defendant incompetent but capable of being restored to competency within sixty days. On July 24, 2008, the court,

---

[1] General Statutes § 54-252 (a) provides in relevant part: "Any person who has been convicted or found not guilty by reason of mental disease or defect of a sexually violent offense . . . shall . . . register such person's name, identifying factors and criminal history record, documentation of any treatment received by such person for mental abnormality or personality disorder, and such person's residence address and electronic mail address, instant message address or other similar Internet communication identifier, if any, with the Commissioner of Public Safety on such forms and in such locations as said commissioner shall direct, and shall maintain such registration for life. . . ."

[2] The defendant was required to register as a sex offender due to a 1996 conviction of first degree sexual assault.

*Markle, J.*, found the defendant incompetent but restorable. On September 24, 2008, the court, *Fasano, J.*, heard the testimony of Mark S. Cotterell, a psychiatrist at Connecticut Valley Hospital, that the defendant was cooperating with his medication regimen, had shown improvement and was capable of understanding the proceedings and assisting his legal counsel.[3] The court subsequently found that the defendant had been restored to competency.

On November 4, 2008, the defendant, through counsel, requested another competency examination pursuant to § 54-56d. On December 10, 2008, the court, *Crawford, J.*, once again found the defendant to be incompetent but restorable. The treatment plan that the court ordered included the administration of antipsychotic drugs. The court also appointed a health care guardian because the defendant expressed his unwillingness to take antipsychotic drugs. After the defendant was transferred back to the department of correction, he refused to take antipsychotic medication and his mental condition deteriorated.

The defendant has a history of five inpatient psychiatric hospitalizations. He has been diagnosed with delusional disorder, persecutory type; polysubstance dependence; antisocial personality disorder; and narcissistic personality disorder. Presently, the defendant is diagnosed with delusional disorder, which can be treated with antipsychotic medication. The defendant previously has been treated successfully with the antipsychotic drug Risperdal, with minimum side effects. His treatment plan for restoration to competency includes treatment with Risperdal. If, however, the defendant continues to refuse to take the medication orally, the plan includes administering the antipsychotic drug Haldol intramuscularly.

---

[3] Cotterell also testified that he could not predict the defendant's condition if he stopped taking his medications.

On March 19, 2009, the court, *Crawford, J.*, found that involuntary medication of the defendant would render him competent to stand trial. The court ordered that the defendant be involuntarily medicated over a period of sixty days and set a hearing date for May 21, 2009, to reconsider his competency. This interlocutory appeal followed.[4]

The defendant claims that the court, *Crawford, J.*, improperly found that he should be involuntarily administered antipsychotic medication to render him competent to stand trial. Specifically, the defendant challenges the court's application of the first factor set forth in *Sell v. United States*, 539 U.S. 166, 180, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003), to the facts of his case, and argues that his failure to register as a sex offender in violation of § 54-252 is not a serious enough crime to give the government an important interest that outweighed his liberty interest. We disagree.

To evaluate the defendant's claim, we first set forth the applicable standard of review. "Whether the Government's asserted interest is important is a legal question that is subject to *de novo* review." (Emphasis in original.) *United States v. Gomes*, 387 F.3d 157, 160 (2d Cir. 2004), cert. denied, 543 U.S. 1128, 125 S. Ct. 1094, 160 L. Ed. 2d 1081 (2005).

---

[4] Pursuant to Practice Book § 61-6 (c), the defendant may appeal from an interlocutory ruling deemed to be a final judgment. Here, "[t]his court has jurisdiction, although the appeal is interlocutory, because the defendant's claimed constitutional right to be free from being involuntarily medicated, once infringed, can never be restored. *United States v. Brandon*, 158 F.3d 947, 951 (6th Cir. 1998); *State v. Garcia*, 233 Conn. 44, 65–66, 658 A.2d 947 (1995). The claim is reviewable because the order so concludes the defendant's rights that further proceedings cannot affect those rights. *State v. Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). In fact, the failure to appeal immediately from an order of involuntary medication to restore competency will foreclose review after the trial has concluded. *State v. Lisevick*, 65 Conn. App. 493, 497–98, 783 A.2d 73, cert. denied, 258 Conn. 933, 785 A.2d 230 (2001)." *State v. Jacobs*, 70 Conn. App. 488, 490 n.1, 802 A.2d 857 (2002), vacated on other grounds and remanded, 265 Conn. 396, 828 A.2d 587 (2003).

"[T]he Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Sell* v. *United States*, supra, 539 U.S. 179. The defendant challenges only the state's failure to meet the standard that he committed a serious crime that gives the government an important interest in bringing him to trial.

"[A]n individual has a constitutionally protected liberty interest in avoiding involuntary administration of antipsychotic drugs—an interest that only an essential or overriding state interest might overcome. . . . This is because [t]he forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." (Citations omitted; internal quotation marks omitted.) *United States* v. *Bush*, 585 F.3d 806, 813 (4th Cir. 2009). "[A] court must find that *important* governmental interests are at stake. The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through application of the criminal law the basic human need for security." (Emphasis in original.) *Sell* v. *United States*, supra, 539 U.S. 180.

This is the standard adopted through Connecticut jurisprudence. See *State* v. *Jacobs*, 265 Conn. 396, 399–400, 828 A.2d 587 (2003) (concluding that standard articulated in *Sell* governs issue of involuntarily medicating defendant so that defendant may be competent to stand trial in Connecticut). Although our precedent reflects

an adaptation of the standard set forth by the United States Supreme Court, the issue has not been explored through Connecticut law since *Sell* v. *United States*, supra, 539 U.S. 166, and so we turn to federal interpretations for guidance.

With respect to the seriousness of the crime, the United States Court of Appeals for the Sixth Circuit concluded that although *Sell* qualifies serious crimes as being against "the person or . . . property"; id., 180; a crime does not have to be violent to be considered serious. *United States* v. *Green*, 532 F.3d 538, 548 (6th Cir. 2008), cert. denied, 556 U.S. 1270, 129 S. Ct. 2735, 174 L. Ed. 2d 250 (2009). Further, the court determined that the lack of an identifiable victim does not mean that a crime is victimless because, with such crimes as drug trafficking, society as a whole is the victim. Id., 549. The court reasoned that when "a criminal defendant possesses an illegal substance with the intent to distribute that substance to others, unquestionably there are victims." Id. We find this reasoning persuasive and applicable to the present case.

The defendant is accused of violating the requirement set forth in § 54-252 that he register as a sex offender. Citing *Sell*, the defendant argues that while the failure to register as a sex offender is a serious crime, it is not a serious crime against the person or a serious crime against property. We refuse to take such a narrow view of the *Sell* criteria. First, we note that the defendant's reliance on *Sell* is misplaced. What the United States Supreme Court actually said is that "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through application of the criminal law the basic human need for security." *Sell* v. *United States*, supra, 539 U.S. 180.

The fact that the crime of not registering as a sex offender is not a crime of violence does not negate the seriousness of undetected sex offenders existing within communities. "The current law, [General Statutes] § 54-250 et seq. of chapter 969 of the General Statutes, is commonly referred to as Megan's Law. . . . The intent behind this legislation was to alert the public by identifying potential sexual offender recidivists when necessary for public safety. . . . The law was broadened in 1997 to include *all* convicted sex offenders." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Boysaw*, 99 Conn. App. 358, 363, 913 A.2d 1112 (2007). "The legislature enacted the law to protect the public from sex offenders." (Internal quotation marks omitted.) *State* v. *Arthur H.*, 288 Conn. 582, 590, 953 A.2d 630 (2008).

Section 54-252 was enacted to protect the general public in the same way that statutes prohibiting the sale of illegal narcotics are created to protect the general public. Taking the legislative intent of this specific statute into consideration, we conclude that, irrespective of whether the potential victim of an unidentified sex offender is known, the threat to the public in general satisfies the requirement that the state have an important interest at stake. See *Sell* v. *United States*, supra, 539 U.S. 179.

In *United States* v. *Gomes*, supra, 387 F.3d 160–61, the United States Court of Appeals for the Second Circuit concluded that the crime of illegal possession of a handgun was serious enough to satisfy the first factor of the *Sell* test. The court reasoned that the fact that Congress enacted a statute penalizing the possession of a handgun by someone with prior convictions more seriously than someone without prior offenses was evidence in itself of how serious Congress thought possession of a firearm by a " 'career criminal' " to be. Id., 161. As in *Gomes*, the offense criminalized by § 54-252 is one that

is based on the defendant's prior convictions and his need to identify himself on the basis of those convictions. This adds further support to our conclusion that the defendant's crime is serious and gives the government an important interest in bringing him to trial.

Finally, courts have looked to the maximum statutory penalty associated with the crime as a significant, objective guidepost in determining the seriousness of a crime. E.g., *United States* v. *Green*, supra, 532 F.3d 549; *United States* v. *Hernandez-Vasquez*, 513 F.3d 908, 919 (9th Cir. 2008); *United States* v. *Valenzuela-Puentes*, 479 F.3d 1220, 1226 (10th Cir. 2007). "By utilizing the potential statutory penalty to assess the seriousness of a crime, we employ an objective standard for application and thereby avoid any arbitrary determinations, and further, respect the judgment of the legislative branch as reflective of societal attitudes." *United States* v. *Green*, supra, 549. The maximum statutory penalty for a violation of § 54-252 is five years imprisonment, which, while not as grave as twenty years imprisonment, for example, still makes the offense a felony with the potential for a significant penalty attached. Further, using the maximum statutory penalty in the analysis of the seriousness of a crime gives the courts an objective way to let the legislative intent factor enter into the analysis. Here, as discussed above, the legislature's view of the severity of sex crimes is reflected in the fact that it created a separate felony offense for the failure to register as a sex offender. This adds more weight to what would otherwise be a moderate maximum penalty.

The defendant argues that there are mitigating circumstances surrounding his case that negate the crime's seriousness. "Courts, however, must consider the facts of the individual case in evaluating the Government's interest in prosecution. Special circumstances

may lessen the importance of that interest. The defendant's failure to take drugs voluntarily, for example, may mean lengthy confinement in an institution for the mentally ill—and that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime. We do not mean to suggest that civil commitment is a substitute for a criminal trial. The Government has a substantial interest in timely prosecution. And it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The potential for future confinement affects, but does not totally undermine, the strength of the need for prosecution. The same is true of the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed, see 18 U.S.C. § 3585 [b]). Moreover, the Government has a concomitant, constitutionally essential interest in assuring that the defendant's trial is a fair one." *Sell* v. *United States*, supra, 539 U.S. 180.

In the present case, the possibility exists that the defendant will be civilly confined for a significant length of time. He has been diagnosed with numerous mental disabilities and has a history of inpatient psychiatric hospitalizations. This decreases the likelihood that, if the defendant is not brought to trial, he will be released without any restrictions on his liberty. Civil commitment, however, is not a substitute for imprisonment, which is likely to be suspended and replaced with or followed by a probationary period. Given the seriousness of the offense of failure to register as a sex offender as one that protects the general welfare, the possibility of civil commitment does not serve as a strong enough mitigating factor to render the crime not serious.

Further, the defendant argues that he has been incarcerated for approximately two and one-half years, which is one half of his potential five year sentence. The defendant maintains that this is a significant amount of time and, therefore, serves as a mitigating factor when determining the seriousness of his offense, pursuant to *Sell* v. *United States*, supra, 539 U.S. 180. As the United States Court of Appeals for the Fourth Circuit reasoned, "[e]ven though [the defendant] can make a serious argument that the time she has already served in prison is sufficiently long to cover, or almost cover, any sentence that reasonably could be anticipated, this fact alone does not defeat [the government's interest]." (Internal quotation marks omitted.) *United States* v. *Bush*, supra, 585 F.3d 815. Because § 54-252, the statute that the defendant is charged with violating, affords the general public safety by being able to identify sex offenders, criminals known to have high recidivism rates, we conclude that the time that the defendant has already served does not negate the state's interest in ensuring that he is either imprisoned or released with appropriate monitoring. Without such restrictions on the defendant's liberty and ability to violate the statute again by not registering, the registry system would not be able to function as intended.

The order of the trial court allowing for the involuntary medication of the defendant is affirmed.

In this opinion the other judges concurred.